# In the United States Court of Federal Claims

No. 22-1384
(Filed Under Seal: April 2, 2026)[*]
(Reissued: April 23, 2026)

```
* * * * * * * * * * * * * * * * * *
                                  *
                                  *
MARK RADKE,                       *
                                  *
                    Petitioner,   *
                                  *
        v.                        *
                                  *
SECRETARY OF HEALTH               *
AND HUMAN SERVICES,               *
                                  *
                    Respondent.   *
                                  *
* * * * * * * * * * * * * * * * * *
```

*Amber Diane Wilson*, Attorney, Wilson Science Law, of Washington, D.C., for Petitioner.

*Tyler C. King*, Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Respondent.

## OPINION AND ORDER

**SOMERS**, Judge.

The "Because I Said So Fallacy" (also referred to as the "Just Because Fallacy" or the "*Ipse Dixit* Fallacy") assumes a conclusion's accuracy based solely on the authority of the decisionmaker. The issue with conclusions premised on the "Because I Said So Fallacy" is that they do not provide a reasoned explanation for a decision. Worn-down parents often employ this tactic when their children repeatedly question their decisions. As most know, however, "because I said so" is not usually a satisfactory answer to the disappointed party. Likewise, "because I said so" is not a satisfactory answer when a decision comes before a reviewing court under the standard of review prescribed by the Administrative Procedure Act. Under this standard of review, a court need not accept the assertion, without more, that a decision is correct because the

---

[*] On April 2, 2026, the Court issued this opinion and order under seal in accordance with Rule 18(b) of the Vaccine Rules (Appendix B) of the Rules of the U.S. Court of Federal Claims. The Court provided the parties 14 days to propose redactions. The parties did not propose any redactions; accordingly, the Court reissues this opinion in its original form with a few minor stylistic and typographical corrections.

decisionmaker says so.  But that is exactly the position the chief special master's entitlement decision puts the Court in here: to uphold the decision, the Court would essentially have to accept that the chief special master is correct because he said so.

Petitioner Mark Radke has asked the Court to review the chief special master's decision to deny him compensation under the National Vaccine Injury Compensation Program ("Vaccine Act").  *See* ECF No. 45.  Pursuant to the Vaccine Act, upon the filing of a motion for review, a decision of a special master is reviewed by this Court to ensure that it is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."  *See* 42 U.S.C. § 300aa-12(e)(2)(B).  As explained below, the Court finds that the chief special master's entitlement decision did not adequately explain his reasoning for denying Petitioner's claim, and it remands the case to the chief special master for further proceedings.

## BACKGROUND

The facts of this case are largely set forth in the chief special master's decision.  *See Radke v. Sec'y of Health & Hum. Servs.*, No. 22-1384V, 2025 WL 3091516, at *1–11 (Fed. Cl. Spec. Mstr. Oct. 6, 2025) (docketed in this case as ECF No. 43 at 1–22).  Rather than repeating the extensive factual record, the Court will recount only the salient facts and procedural background here.  On September 30, 2019, Petitioner Mark Radke received a pneumococcal vaccine, which allegedly caused him to develop polymyalgia rheumatica ("PMR").  ECF No. 45 at 2.  Petitioner based his claim on the expert testimony of Dr. Efthimiou, a board-certified rheumatologist.  *Id.*  Dr. Efthimiou theorized that the pneumococcal vaccine could adversely deregulate T-cells, which then could trigger inflammatory symptoms consistent with PMR.  *Id.* at 11.  Dr. Efthimiou further testified that Petitioner experienced this physical response, which induced his PMR illness, three days after receipt of the vaccination.  *Id.* at 18–19.

On October 6, 2025, the chief special master issued a decision finding for the Secretary of Health and Human Services ("Secretary").  *Radke*, 2025 WL 3091516 at *1.  The chief special master found that Dr. Efthimiou's testimony failed to satisfy the legal standard for general causation under prong one of the test set forth in *Althen v. Sec'y of Health & Hum. Servs.*, 418 F.3d 1274 (Fed. Cir. 2005).  *See id.* at *17 ("I find [that *Althen* prong one] has not been preponderantly established . . . .  For even if Petitioner had experienced PMR, as alleged, he has not preponderantly established that the pneumococcal vaccine could be causal of it." (footnote omitted)).  Specifically, because "[t]he Vaccine Program has routinely dismissed claims alleging PMR as a vaccine injury—regardless of the vaccine involved[,]" and Petitioner did not provide any new proof of a vaccine-PMR association, the chief special master denied entitlement.  *Id.* at *1, *17.

On November 5, 2025, Petitioner filed a motion for review of the chief special master's decision pursuant to Vaccine Rule 23.  ECF No. 45.  Therein, Petitioner claims that the chief special master placed "an erroneous legal burden" on Petitioner because he relied on unfavorable, non-binding cases to draw his conclusion.  *Id.* at 1, 5.  In support, Petitioner argues that: (1) Petitioner's case is factually distinct from the cases relied upon by the chief special master; (2) the chief special master's reliance on non-binding authority to discount case report evidence conflicts with the Federal Circuit's decision in *Doles v. Sec.'y of Health and Hum.*

2

*Servs.*, No. 2023-2404, 2025 WL 1177875 (Fed. Cir. Apr. 23, 2025); (3) the medical studies that Dr. Efthimiou relied on are more recent than the medical studies in the cases that the chief special master considered; and (4) Dr. Efthimiou presented a unique medical theory, even though he cited the same medical literature used in a previous case before the chief special master. *Id.* at 6, 8, 13, 15. On December 5, 2025, the Secretary filed a response to Petitioner's motion for review. ECF No. 47. Therein, the Secretary contends that the chief special master did not abuse his discretion by using prior decisions to inform his conclusion here because he had already found that PMR was not a vaccine-caused injury and thus should not have been required to relitigate an issue he has already decided. *Id.* at 6. Furthermore, the Secretary claims that the chief special master properly considered and weighed the record evidence to determine that Petitioner's medical theory was unsupported by a preponderance of the evidence. *Id.* at 10. Therefore, the Secretary asserts that the Court cannot reweigh the evidence on review solely because Petitioner believes that the chief special master should have accorded greater weight to case report evidence. *Id.* at 11. The Court held oral argument on the issues raised by the parties' on February 4, 2026, and Petitioner's motion for review is ripe for adjudication. *See* ECF No. 48.

## DISCUSSION

### A.    Legal Standard

Under the Vaccine Act, judges of this Court review decisions issued by special masters upon the filing of a motion for review. 42 U.S.C. § 300aa-12(e)(1). As prescribed by the Act, in reviewing the decision of a special master, the Court may:

> (A) uphold the findings of fact and conclusions of law of the special master and sustain the special master's decision,
>
> (B) set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and issue its own findings of fact and conclusions of law, or
>
> (C) remand the petition to the special master for further action in accordance with the court's direction.

*Id.* § 300aa-12(e)(2). In other words, "[u]nder the Vaccine Act, the Court of Federal Claims reviews [a special master's] decision to determine if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Markovich v. Sec'y of Health & Hum. Servs.*, 477 F.3d 1353, 1355–56 (Fed. Cir. 2007) (quoting *id.* § 300aa-12(e)(2)(B)). The Federal Circuit has indicated that:

> These standards vary in application as well as degree of deference. Each standard applies to a different aspect of the judgment. Fact findings are reviewed by us, as by the Claims Court judge, under the arbitrary and capricious standard; legal questions under the "not in accordance with law" standard; and discretionary

3

rulings under the abuse of discretion standard.  The latter will rarely come into play except where the special master excludes evidence.

*Munn v. Sec'y of Health & Hum. Servs.*, 970 F.2d 863, 870 n.10 (Fed. Cir. 1992).

Thus, the Court's standard of review in these cases is "uniquely deferential." *Milik v. Sec'y of Health & Hum. Servs.*, 822 F.3d 1367, 1376 (Fed. Cir. 2016) (quoting *Hodges v. Sec'y of Health & Hum. Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993)).  The Court does not "reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder." *Porter v. Sec'y of Health & Hum. Servs.*, 663 F.3d 1242, 1249 (Fed. Cir. 2011).  Instead, so long as a special master's conclusions are "based on evidence in the record that was not wholly implausible," the Court is "compelled to uphold that finding as not being arbitrary or capricious." *Lampe v. Sec'y of Health & Hum. Servs.*, 219 F.3d 1357, 1363 (Fed. Cir. 2000).  Therefore, "[t]he court's inquiry . . . must . . . focus on whether the Special Master examined the 'relevant data' and articulated a 'satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *Dixon v. Sec'y of Health & Hum. Servs.*, 61 Fed. Cl. 1, 8 (2004) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  "[I]f the special master 'has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate.'" *Hibbard v. Sec'y of Health & Hum. Servs.*, 698 F.3d 1355, 1363 (Fed. Cir. 2012) (quoting *Hines v. Sec'y of Health & Hum. Servs.*, 940 F.2d 1518, 1528 (Fed. Cir. 1991)).

Here, Petitioner's asserted injury—PMR allegedly caused by the pneumococcal vaccine—is a "non-table" injury.  *See* 42 U.S.C. § 300aa-14(a).  Accordingly, to prove actual causation by a preponderance of the evidence, Petitioner was required to demonstrate: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury." *Althen*, 418 F.3d at 1278.  In this petition for review, only the first *Althen* prong is at issue, which requires a petitioner to prove by preponderant evidence that "a medical theory causally connect[s] the vaccination and the injury." *Id*. (citations omitted).

Under *Althen* prong one, while the proffered medical theory need not "rise to the level of scientific certainty" and a petitioner need not provide "detailed medical and scientific exposition on the biological mechanisms," a petitioner's medical theory must give a "reputable medical explanation for the relationship." *Cerrone v. Sec'y of Health & Hum. Servs.*, 146 F.4th 1113, 1120–21 (Fed. Cir. 2025); *Knudsen ex rel. Knudsen v. Sec'y of Health & Hum. Servs.*, 35 F.3d 543, 549 (Fed. Cir. 1994).  Put differently, the theory must be more than merely "plausible"; it must be "supported by a sound and reliable medical or scientific explanation." *Knudsen*, 35 F.3d at 548; *see also LaLonde v. Sec'y of Health & Hum. Servs.*, 746 F.3d 1334, 1339 (Fed. Cir. 2014) ("[W]e have made clear that simply identifying a 'plausible' theory of causation is insufficient for a petitioner to meet her burden of proof.  Instead, the statutory standard of preponderance of the evidence requires a petitioner to demonstrate that the vaccine more likely than not caused the condition alleged." (citation omitted)).  Accordingly, "the evidence a claimant offers must, in

4

totality, always accomplish one thing in the end: preponderantly establish that the vaccine(s) at issue more likely than not can cause the relevant disease." *Cerrone*, 146 F.4th at 1122 (emphasis omitted) (citation omitted).

**B.      Analysis**

As mentioned above, in reviewing a special master's decision, Congress has instructed the Court to "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 300aa-12(e)(2)(B). This familiar standard of review is borrowed from the Administrative Procedure Act ("APA"). *Compare id.*, *with* 5 U.S.C. § 706(2)(A). Accordingly, the Court employs general administrative law principles in applying this standard to its review of special masters' decisions under the Vaccine Act, *see, e.g., Hines*, 940 F.2d at 1527–28 (applying several Supreme Court and federal appellate court administrative law decisions to define the arbitrary and capricious standard under the Vaccine Act), because "[w]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it," *George v. McDonough*, 596 U.S. 740, 746 (2022) (citation and internal quotation marks omitted); *see also United States v. Davis*, 588 U.S. 445, 458 (2019) ("[W]e normally presume that the same language in related statutes carries a consistent meaning."); *Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019) ("This Court does not lightly assume that Congress silently attaches different meanings to the same term in the same or related statutes."); *Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

At first blush, the chief special master's entitlement decision would appear to pass muster under the APA standard of review, as it is twenty-five pages, *see generally* ECF No. 43, and contains a lengthy recitation of the facts, procedural history, and arguments of the parties, *see Radke*, 2025 WL 3091516, at *1–11. However, even a cursory read of the analysis section reveals that the chief special master's explanation for his decision is insufficient for a decision subject to APA review. *See id.* at *15–18. Critically, the chief special master fails to demonstrate that his conclusions were based on "reasoned decisionmaking," such that the Court can assess whether his decision was "based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (first quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015); then quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). Stated differently, the chief special master did not "articulate a satisfactory explanation for [his] action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)); *accord Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("Not only must [the] decreed result be within the scope of [] lawful authority, but the process by which it reaches that result must be logical and rational."). As the Federal Circuit has explained, "[f]or judicial review to be meaningfully achieved within the[] strictures [of APA review], the [special master] must present a full and *reasoned explanation* of its decision. The [special master] must set forth [his or her] findings and the grounds thereof, as supported by the [] record, and explain [his or her] application of the law to the found facts." *In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir.

2002) (emphasis added).  In short, "[t]his standard requires that the [special master] not only have reached a sound decision, but have articulated the reasons for that decision."  *Id.*

In light of this standard, it is apparent that the chief special master's analysis, which is three pages long and replete with conclusory statements, does not supply a "reasoned explanation" for his decision because "summariz[ing] and reject[ing] arguments without explaining why" and conclusory statements "alone are insufficient."  *In re NuVasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016) (citation and internal quotations omitted) (rejecting a decision of the Patent Trial and Appeal Board for insufficient reasoning).  Indeed, after sifting through the "analysis" section, it appears that a single six-sentence paragraph is the only portion that arguably qualifies as analysis:

> Dr. Efthimiou's causation opinion largely repeats the kinds of arguments that other special masters—including me—have routinely rejected as unpersuasive.  *See generally Munoz,* 2024 WL 4113486, at \*13.  Indeed, the report offered in this case is exceedingly similar to what I reviewed in *Munoz,* even if the vaccines are not the same.  Further, and like experts in past cases, he fails to identify a specific antigen associated with the development of PMR, or demonstrate that Petitioner himself possessed any genetic susceptibility.  Petitioner has not otherwise offered any more recent scientific or medical studies or articles that would suggest a PMR-vaccine association is now thought to be more likely.  And he did not persuasively show that the pneumococcal vaccine can be for present purposes deemed interchangeable with the Tdap vaccine—the former does not include the tetanus toxoid component, and pneumococcal conjugate is not wholly equivalent to the diphtheria component of Tdap.  By contrast, Respondent's experts effectively and persuasively rebutted Petitioner's causation contentions—Dr. Jameson in particular, who succinctly demonstrated the clear failings in Petitioner's causation theory.

*Radke*, 2025 WL 3091516, at \*17.  However, to the extent that this paragraph qualifies as analysis, missing entirely is a "reasoned explanation" of the chief special master's decision to deny Petitioner entitlement or an attempt to make a "rational connection" between the extensive background section of the opinion and the conclusions drawn.  To further illustrate this point, the Court considers each sentence of the foregoing paragraph in turn.

To begin, the chief special master writes that "Dr. Efthimiou's causation opinion largely repeats the kinds of arguments that other special masters—including me—have routinely rejected as unpersuasive."  *Id.*  Here, the chief special master fails to identify what "kinds of arguments" Dr. Efthimiou repeats or explain why they are unpersuasive.  *See id.*  Furthermore, the only reference offered in support of this sentence is a general citation to *Munoz v. Sec'y of Health & Hum. Servs.*, No. 21-1369V, 2024 WL 4113486 (Fed. Cl. Aug. 12, 2024), *rev. denied*, 174 Fed. Cl. 276 (2024), which is the chief special master's own decision currently on appeal to the Federal Circuit.  But *Munoz* offers no support: it contains neither a discussion of the arguments that "other special masters have routinely rejected as unpersuasive" nor any "reasoned explanation" of Dr. Efthimiou's causation opinion.  *Radke*, 2025 WL 3091516, at \*17 (cleaned up).  Rather, in *Munoz*, the chief special master makes—*almost verbatim*—the exact same conclusory statement that he makes here.  *Compare id.* ("Dr. Efthimiou's causation opinion

largely repeats the kinds of arguments that other special masters—including me—have routinely rejected as unpersuasive."), *with Munoz*, 2024 WL 4113486, at *13 ("Dr. Efthimiou's causation opinion largely repeats the kinds of arguments that other special masters have routinely rejected as unpersuasive."). In other words, this is an *ipse dixit* stacked atop another *ipse dixit*.

Such a threadbare statement is essentially unreviewable. The Court would have to read Dr. Efthimiou's causation opinion, decide whether it finds the opinion "unpersuasive," and then determine whether the Court finds the opinion unpersuasive for the same reasons as the chief special master. Besides being an impossible task, such an undertaking would require the Court to reweigh the evidence, which is impermissible under the applicable standard of review. *See, e.g.*, *Porter*, 663 F.3d at 1249 ("We do not reweigh the factual evidence, assess whether the special master correctly evaluated the evidence, or examine the probative value of the evidence or the credibility of the witnesses—these are all matters within the purview of the fact finder."). Prior to determining whether a special master's decision is rational, the Court must be able to understand the special master's reasoning. Thus, the chief special master's decision cannot be sustained or overruled if it consists of conclusory reasoning.

Next, the chief special master asserts that "the report offered in this case is exceedingly similar to what I reviewed in *Munoz*, even if the vaccines are not the same." *Radke*, 2025 WL 3091516, at *17. But the chief special master offers no explanation as to why this is a problem. Without any further reasoning offered in support of this sentence, the Court cannot discern what is wrong with there being similarity between two medical opinions. Earlier in his opinion, the chief special master opined that "Dr. Efthimiou also appears to have essentially copied and pasted several sections of his of [sic] previously-filed experts [sic] reports to his reports addressing the case at hand." *Id.* Again, it is not clear, without explanation, why this is problematic. The chief special master himself certainly copied and pasted most of his analysis in this case from his opinion in *Munoz*. *Compare Munoz,* 2024 WL 4113486, at *12–14, *with Radke*, 2025 WL 3091516, at *16–18.[1] More importantly, upon reviewing *Munoz*, the Court

---

[1] For example, in *Munoz* the chief special master wrote:

> Dr. Efthimiou's causation opinion largely repeats the kinds of arguments that other special masters have routinely rejected as unpersuasive. Like experts in past cases, he fails to identify a specific antigen associated with the development of PMR, or demonstrate that Petitioner himself possessed the proposed genetic susceptibility. Further, Petitioner has not otherwise offered any more recent scientific or medical studies or articles that would suggest a PMR-vaccine association is now thought to be more likely . . . . By contrast, Respondent's experts (especially Dr. Hawse) effectively and persuasively rebutted Petitioner's causation contentions.

*Munoz*, 2024 WL 4113486, at *13. Similarly, here, the chief special master wrote:

> Dr. Efthimiou's causation opinion largely repeats the kinds of arguments that other special masters—including me—have routinely rejected as unpersuasive. . . . Further, and like experts in past cases, he fails to identify a specific antigen associated with the development of PMR, or demonstrate that Petitioner himself

cannot discern what is "exceedingly similar" between Dr. Efthimiou's opinion there and his opinion here, especially given the equally limited analysis in *Munoz*.

Failing to explain this assertion, the chief special master continues, "[f]urther, and like experts in past cases, he fails to identify a specific antigen associated with the development of PMR, or demonstrate that Petitioner himself possessed any genetic susceptibility." *Radke*, 2025 WL 3091516, at *17. This sentence is, once again, conclusory. Without any additional reasoning or support, the chief special master does not demonstrate that his conclusions were "the product of reasoned decision making"; there is no "reasoned explanation" of why Dr. Efthimiou's failure to identify a specific antigen or demonstrate that Petitioner possessed a genetic susceptibility to PMR dooms his case.

Importantly, there are two glaring legal issues with this sentence. First, Petitioner is not required to identify a specific antigen to satisfy *Althen* prong one. *See, e.g.*, *Knudsen*, 35 F.3d at 549 ("[C]ausation can be found in vaccine cases based on epidemiological evidence and the clinical picture regarding the particular [petitioner] without detailed medical and scientific exposition on the biological mechanisms."). Thus, if it was important that Petitioner identified a specific antigen here, perhaps because of his causation theory, the chief special master needed to explain why this was necessary. That Petitioner's medical theory fails without identification of a specific antigen may indeed be the correct conclusion, but without more clarification, the Court cannot discern why that fact is dispositive here. Second, with regard to genetic disposition, the Federal Circuit has held that "requiring either epidemiologic studies, rechallenge, *the presence of pathological markers or genetic disposition*, or general acceptance in the scientific or medical communities to establish a logical sequence of cause and effect is contrary to what we said in *Althen III*." *Capizzano v. Sec'y of Health & Hum. Servs.*, 440 F.3d 1317, 1325 (Fed. Cir. 2006) (emphasis added). Again, because the chief special master did not explain why proving genetic susceptibility is important to Petitioner's case, the Court cannot determine how that factor, which Petitioner is not required to prove, advances the analysis.

The chief special master then adds, "Petitioner has not otherwise offered any more recent scientific or medical studies or articles that would suggest a PMR-vaccine association is now thought to be more likely." *Radke*, 2025 WL 3091516, at *17. To begin, this sentence invites speculation as to what the chief special master means by "more recent." The Court assumes that he is referring to studies more recent than those he reviewed in *Munoz* and his other previous cases. As it stands, this statement would meaningfully show how Petitioner failed to meet his burden under *Althen* prong one if *Munoz* had actually analyzed scientific and medical studies or articles, or if the chief special master had discussed the factors that he found to have failed there.

---

possessed any genetic susceptibility. Petitioner has not otherwise offered any more recent scientific or medical studies or articles that would suggest a PMR-vaccine association is now thought to be more likely. . . . By contrast, Respondent's experts effectively and persuasively rebutted Petitioner's causation contentions—Dr. Jameson in particular, who succinctly demonstrated the clear failings in Petitioner's causation theory.

*Radke*, 2025 WL 3091516, at *17.

But *Munoz* lacks any such analysis or discussion.  The "analysis" in *Munoz* is marginally longer than the limited analysis section in the instant decision but nevertheless contains the same conclusory statements.  *Compare id.* ("Petitioner has not otherwise offered any more recent scientific or medical studies or articles that would suggest a PMR-vaccine association is now thought to be more likely . . . ."), *with Munoz*, 2024 WL 4113486, at *13 ("Petitioner has not otherwise offered any more recent scientific or medical studies or articles that would suggest a PMR-vaccine association is now thought to be more likely . . . .").  *Munoz* cannot be the foundation upon which the chief special master builds this decision because *Munoz* does not contain sufficient reasoning to support the conclusions here.  In other words, the chief special master's present analysis again amounts to a stacked *ipse dixit*, with his unsupported conclusions here hinging on unsupported conclusions elsewhere.

This is not to say that special masters need to rehash the same analysis in case after case or that every opinion needs to be a novel.  *See Radke*, 2025 WL 3091516, at *18 ("I could certainly write 50 or more pages spelling out in detail all the ways in which the proposed causal theory is preponderantly deficient.  But special masters should not be compelled to do so when they are familiar with a theory that they understand has almost never succeeded—as is the case here." (emphasis omitted)).  However, to be sustained under the APA standard that applies in Vaccine Act cases, a special master must "reasonably explain" his or her reasoning at least once.  *See, e.g.*, *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (stating that the Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned").  Here, the chief special master needed to, at the very least, refer to a "patient zero" case that contains a more fulsome analysis showing that Petitioner's theory cannot cause PMR.  Instead, the chief special master cites *Munoz* and a slew of other cases without providing any discussion of them.  *See Radke*, 2025 WL 3091516, at *16–17.  The chief special master's reliance on these authorities to explain his conclusion—without any real analysis—is problematic because the referenced cases involve either a different medical theory or a different vaccine than is at issue here.  *See id.* (citing *Munoz*, 2024 WL 4113486, at *1 (holding that the Tdap vaccine did not cause claimant's PMR); *Van Dycke v. Sec'y of Health & Hum. Servs.,* No. 18-106V, 2023 WL 4310701, at *1 (Fed. Cl. Spec. Mstr. June 7, 2023) (same); *Suliman v. Sec'y of Health & Hum. Servs.,* No. 13-993V, 2018 WL 6803697, at *1 (Fed. Cl. Spec. Mstr. Nov. 27, 2018) (same); *Thompson v. Sec'y of Health & Hum. Servs.,* No. 18-1217V, 2023 WL 9053982, at *13 (Fed. Cl. Spec. Mstr. Dec. 5, 2023) (finding that cytokine upregulation caused by the pneumococcal vaccine did not cause claimant's PMR); *Sciortino v. Sec'y of Health & Hum. Servs.*, No. 22-99V, 2024 WL 4579389, at *1 (Fed. Cl. Spec. Mstr. July 24, 2024) (holding that the flu vaccine did not cause claimant's PMR); *Giesbrecht v. Sec'y of Health & Hum. Servs.,* No. 16-1338V, 2023 WL 2721578, at *1 (Fed. Cl. Spec. Mstr. March 30, 2023) (same); *Kelly v. Sec'y of Health & Hum. Servs.,* No. 17-1475V, 2022 WL 17819157, at *1 (Fed. Cl. Spec. Mstr. Oct. 12, 2022) (same)).

If *Munoz* or another of the foregoing authorities explained why PMR can *never* be caused by a vaccine or held that Petitioner's *specific* medical theory cannot cause PMR, then the chief special master could have relied on those cases here without much further explanation.  But the cited cases do not do that.  Moreover, even leaving aside the conclusory nature of the chief special master's above sentence, the sentence is also incorrect.  *See supra* p. 8–9.  Petitioner alleges that he *did* introduce recent medical evidence demonstrating a PMR-vaccine association.

*See* ECF No. 45 at 8 ("[T]he Chief failed to acknowledge that Dr. Efthimiou's testimony was based on novel published literature that could not have been discussed in the prior decisions given the chronology.  The recent peer-reviewed publications objectively confirmed that PMR can be clinically triggered by environmental triggers . . . ." (citing cases whose hearings occurred before studies which "confirmed that PMR can be clinically triggered by environmental triggers" were published)).

Moving to the penultimate sentence of the analysis paragraph above, the chief special master concludes that Petitioner "did not persuasively show that the pneumococcal vaccine can be for present purposes deemed interchangeable with the Tdap vaccine—the former does not include the tetanus toxoid component, and pneumococcal conjugate is not wholly equivalent to the diphtheria component of Tdap." *Radke*, 2025 WL 3091516, at *17.  This statement is wholly unhelpful to the reviewing Court, which is left to ask why the chief special master regarded as dispositive Petitioner's failure to show that the pneumococcal vaccine is interchangeable with the Tdap vaccine.  While the Vaccine Act's use of the APA standard may not have required the chief special master to issue a fifty-page decision, it does charge him to write a decision that provides "a satisfactory explanation for [his] action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines*, 371 U.S. at 168).  Here, the chief special master stated his conclusion—that Petitioner failed to meet his burden under the Vaccine Act—but did not provide any real explanation for that conclusion.  As in solving a mathematical problem, he did not adequately show his work.

This brings the Court to the final sentence of the paragraph: "By contrast, Respondent's experts effectively and persuasively rebutted Petitioner's causation contentions—Dr. Jameson in particular, who succinctly demonstrated the clear failings in Petitioner's causation theory." *Radke*, 2025 WL 3091516, at *17.  As with the previous sentences, this comparison of the experts' opinions is deficient.  How did Respondent's experts effectively and persuasively rebut Dr. Efthimou's opinion?  What did Dr. Jameson demonstrate that shows the clear failings in Petitioner's causation theory?  The sentence is either a topic sentence or a concluding sentence bereft of any accompanying substance.  The APA standard applicable here demands more. Without knowing what the chief special master found so effective and persuasive, the Court cannot review his decision.  Even if the Court could divine flaws in Petitioner's causation theory itself, it cannot know which flaws influenced the chief special master's decision-making.  This sentence calls on the Court to reweigh Petitioner's causation theory against Respondent's expert reports, but in reviewing a special master's judgment, the Court is not to "substitute its judgment for that of the [special master]." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).  Rather, the Court is only "to assess only whether the decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *Regents*, 591 U.S. at 16 (quoting *Citizens to Preserve Overton Park*, 401 U.S. at 416).  Put differently, the Court has no way of ascertaining, without more, whether the chief special master's conclusion is rational. In short, the APA standard applicable here required the chief special master to explain both how Respondent's experts "effectively and persuasively rebutted Petitioner's causation contentions" and why the rebuttal was convincing.  *Radke*, 2025 WL 3091516, at *17.  Simply stating that "it was" does not suffice.

Based on the Court's review, the paragraph discussed directly above is the only part of the decision's "Analysis" section that actually contains any analysis. Nowhere else in the decision does the chief special master "reasonably explain" his conclusion or the "connection between the facts found and the choice made." *Burlington Truck Lines*, 371 U.S. at 168. The other paragraphs under the "Analysis" header better qualify as recitation and conclusion. For example, the first paragraph of the analysis is simply a laundry list of cases with brief parentheticals devoid of any actual analysis. *See Radke*, 2025 WL 3091516, at *16. The second paragraph touches on one of the listed cases, *Thompson*, 2023 WL 9053982, but the chief special master does little to connect *Thompson* to the instant case other than to note that both cases involve the pneumococcal vaccine and PMR. *See Radke*, 2025 WL 3091516, at *16. He also notes that the special master who issued the opinion in *Thompson* cited five prior decisions that rejected theories of vaccine causation of PMR; of course, four of those five citations were to cases already cited by the chief special master, so this is essentially a re-citation to his previous citation to those cases. *Id.* (citing *Thompson*, 2023 WL 9053982, at *16). In the third paragraph, the chief special master states that he is familiar with Dr. Efthimou's causation theory because Dr. Efthimou previously proposed essentially the same theory in *Munoz*. *See id*. at *17. Unfortunately, this leaves the Court with more questions than answers. Why does it matter that Dr. Efthimou used the same causation theory in *Munoz*? Why did the chief special master reject this theory both in *Munoz* and here? Why does the theory fail? Neither the chief special master's opinion here nor his opinion in *Munoz* answers these questions. The final paragraph of this subsection merely states that "[t]hese cases do not control the outcome of this matter." *Id.* Once again, the chief special master declines to elaborate further on this point.

The paragraphs under the subheading regarding Petitioner's failure to carry his burden of proof are likewise replete with narration, excepting the second paragraph already dissected above. To begin, the first paragraph restates the *Althen* standard, which the chief special master does not connect to this or any other paragraph. *Id.* The third paragraph merely reiterates that Petitioner did not "connect all the dots" to prove causation under *Althen* prong one. *Id.* Then, in the fourth paragraph, the chief special master pivots from discussing the instant case to commenting more generally about the Vaccine Program:

> My analysis herein is admittedly truncated. I could certainly write 50 or more pages spelling out in detail all the ways in which the proposed causal theory is preponderantly deficient. But special masters *should not be compelled* to do so when they are familiar with a theory that they understand has almost never succeeded—as is the case here. The Vaccine Program has too many cases before it to engage in lengthy analysis in each and every case, picking through each item of literature filed and addressing every argument made by an expert, no matter how many times that expert has said the same thing. Special masters must streamline their review of matters so that Program resources can be devoted to reasonably disputed issues and/or novel causation theories.

*Id.* at *18 (emphasis in original). While this paragraph does not advance the chief special master's conclusion, it sheds some light on the lack of analysis in the opinion. However, it goes without saying that frustration with judicial backlog is not a justification for failing to provide the reasoned analysis required for meaningful judicial review by this Court. Indeed, the chief

11

special master admits this point in the foregoing paragraph by referring to his analysis as "truncated." *Id.* Although there is nothing inherently wrong with issuing a truncated opinion, a more fulsome baseline opinion must already exist in order to be "cut short" or "curtailed." *Truncated*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1994). But *Munoz*, the opinion the chief special master is presumably truncating here, is itself short on analysis. *See supra* p. 6–9. Finally, in the last paragraph of this section, the chief special master concludes that Petitioner did not sufficiently show "what about the pneumococcal vaccine and PMR is now known that is *different* from the past . . . ." *Radke*, 2025 WL 3091516, at *18 (emphasis in original). This paragraph does little to advance the analysis because, as discussed above, the chief special master does not analyze "the past" beyond mere citation. *See supra* p. 9.

Finally, the short "analysis" section is not saved by some form of analysis existing elsewhere in the decision. For instance, there is no analysis or weighing of evidence in the factual background section of the opinion from which conclusions are then drawn in the analysis section. Contrary to what the Secretary contended at oral argument, the factual background does not contain "findings of fact"; rather, it consists of a narration of the experts' opinions. *See Radke*, 2025 WL 3091516, at *3–9 ("Dr. Efthimiou maintained that PMR likely clinically presents due to an environmental trigger . . . . Dr. Oddis summarized the pertinent medical facts before discussing PMR in general . . . . Dr. Jameson primarily focused his brief report on responding to Dr. Efthimiou's proposition that Petitioner's immune response to his receipt of the pneumococcal vaccine subsequently led to his development of PMR . . . ."). Moreover, the decision does not meaningfully draw upon the facts in the analysis section. *See Burlington Truck Lines*, 371 U.S. at 168 (finding that the APA standard of review requires a "rational connection between the facts found and the choice made").

The Court does not fault the chief special master simply for writing a short analysis section. Nor would the Court fault the chief special master for truncating his analysis here *if* he had drawn on previous on-point cases and analyzed their applicability to the instant case. Simply put, there is a happy medium between "writ[ing] 50 or more pages spelling out in detail all the ways in which the proposed causal theory is preponderantly deficient" and issuing a decision with an analysis that essentially consists of one six-sentence paragraph. *Radke*, 2025 WL 3091516, at *18. The chief special master did not need to write ten or even five pages of actual analysis; the APA standard governs not the length of a decision but its adequacy. If a special master's decision concerns an issue repeatedly brought before the Vaccine Program, a few pages of analysis may suffice, but those few pages must demonstrate that the decision is "the product of reasoned decision making." For example, this Court upheld the chief special master's succinct entitlement decision in *Stiegler* because he "adequately reviewed the record and determined that it was fully developed before denying entitlement." *Stiegler v. Sec'y of Health and Hum. Servs.*, 176 Fed Cl. 786, 802 (2025). There, the chief special master stated that he was familiar with Petitioner's medical theory and literature yet properly analyzed the evidence, finding that Petitioner presented and articulated a "satisfactory explanation" for denying entitlement. *Id.* at 799–800 ("As demonstrated above, the chief special master reviewed Petitioner's medical authorities and arguments in various prior cases and drew upon those conclusions to inform his decision to deny entitlement to compensation . . . . Recognizing the familiar allegations of Petitioner's claims from his adjudication of identical arguments and

authorities in previous cases, the chief special master ordered Petitioner to present something new before progressing this case any further.  Petitioner failed to do so.").

The chief special master's decision comes on the heels of this Court's decision in *Goodwin* and is fraught with the same deficiencies that caused the Court to remand there.  *See Goodwin v. Sec'y of Health & Hum. Servs.*, No. 19-503, 2024 WL 4758470, at \*3 (Fed. Cl. Oct. 10, 2024) ("[T]he special master's decision does not demonstrate that his conclusions were the product of reasoned decision making as his decision does not provide enough reasoning to show the Court that he examine[d] the relevant data, and he did not articulate a satisfactory explanation for [his] action including a rational connection between the facts found and the choice made." (alternations in original) (internal citations and quotations omitted)).  Yet the analysis in *Goodwin* was still more extensive than the chief special master's reasoning here.  *See id.* at \*6 (discussing that the special master contrasted prior vaccine opinions with each other but that doing so "cannot save a decision otherwise lacking a reasoned basis").

The Court is thus compelled to remand this action to the chief special master, where he faces the classic APA choice: he can bolster his original reason for denying entitlement or essentially "rehear" the case should he decide to rest his decision on new reasons.  *See Biden v. Texas*, 597 U.S. 785, 807–08 (2022).  In other words, if the chief special master believes that his conclusions in this case regarding *Althen* prong one are correct, he can simply issue a new decision that explains how he reached those conclusions.  And while that opinion may be "streamline[d]," *Radke*, 2025 WL 3091516, at \*18, it must also provide "a satisfactory explanation[,] . . . including a 'rational connection between the facts found and the choice made,'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines*, 371 U.S. at 168).

Although the result the chief special master reached in this case may ultimately be correct, the Court simply cannot sustain that result based on the lack of explanation given.  For all the reasons discussed above, the Court must remand this matter to the chief special master so that he can articulate a reasoned basis for his decision that the Court can consider under the prescribed standard if either Petitioner or the Secretary is dissatisfied with the result on remand.

## CONCLUSION

For the reasons stated above, the Court finds that the chief special master's decision falls short of meeting the APA standard that this Court is statutorily required to apply in reviewing the decisions of Vaccine Act special masters.  Accordingly, Petitioner's motion for review is **GRANTED**, and the chief special master's decision, *Radke*, 2025 WL 3091516 (docketed as ECF No. 43), is **VACATED**.  The case is **REMANDED** to the chief special master for further proceedings consistent with this opinion.  The chief special master shall issue a new entitlement decision within **ninety days** of the date of the issuance of this decision.  *See* 42 U.S.C. § 300aa-12(e)(2); RCFC App. B, Rule 28(b).

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge